IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


| | |
|---|---|
| AUTUMN GILL,                               ) | |
|                                            ) | |
|                         Plaintiff,         ) | |
|                                            ) | |
| vs.                                        ) | Case No. 07-1214-MLB |
|                                            ) | |
| MICHAEL J. ASTRUE,                         ) | |
| Commissioner of                            ) | |
| Social Security,                           ) | |
|                                            ) | |
|                         Defendant.         ) | |
| _____) | |


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff
supplemental security income (SSI) payments.  The matter has been
fully briefed by the parties and has been referred to this court
for a recommendation and report.  Plaintiff was born on December
19, 1986 (R. at 50), and thus turned 18 on December 19, 2004.
Plaintiff filed her application for disability on June 23, 2004
(R. at 14).  The issue is whether plaintiff is disabled for
purposes of eligibility for either or both child and adult SSI
benefits (R. at 14).

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.

1

§ 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

## II.  Legal standards for child disability

The ALJ is required to apply a three-step analysis when making a determination of whether a child is disabled.  In order to find that a child is disabled, the ALJ must determine, in this order, (1) that the child is not engaged in substantial gainful activity, (2) that the child has an impairment or combination of impairments that is severe, and (3) that the child's impairment meets, medically equals, or functionally equals a listed impairment.  Briggs v. Massanari, 248 F.3d 1235, 1237 (10th Cir. 2001); 20 C.F.R. § 416.924(a) (2007 at 912-913).

If a child has a severe impairment which does not meet or medically equal any listing, the ALJ must decide whether the severe impairment results in limitations that functionally equal the listings.  By "functionally equal the listings," the agency means that the severe impairment must be of listing level severity, *i.e.,* it must result in marked limitations in two domains of functioning or an extreme limitation in one domain. 20 C.F.R. § 416.926a(a) (2007 at 922).  The six domains to be considered are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well being.  20 C.F.R. § 416.926a(b)(1) (2007 at 923).

A child will be considered to have a marked limitation in a

domain when the impairment(s) interferes seriously with the claimant's ability to independently initiate, sustain, or complete activities.  The claimant's day-to-day functioning may be seriously limited when his/her impairment(s) limits only one activity or when the interactive and cumulative effects of his/her impairment(s) limit several activities.  Marked limitation also means a limitation that is more than moderate but less than extreme.  20 C.F.R. § 416.926a(e)(2) (2007 at 924).

A child will be considered to have an extreme impairment in a domain when the child's impairment(s) interferes very seriously with his/her ability to independently initiate, sustain, or complete activities.  The child's day-to-day functioning may be very seriously limited when his/her impairment(s) limits only one activity or when the interactive and cumulative effects of his/her impairment(s) limit several activities.  Extreme limitation also means a limitation that is more than marked. However, extreme limitation does not necessarily mean a total lack or loss of ability to function.  20 C.F.R. § 416.926a(e)(3) (2007 at 924).

## III.  Legal standards for adult disability

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve

4

months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or

she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

## IV.  History of case

At step one, the ALJ found no evidence that plaintiff has ever engaged in substantial gainful activity (R. at 16).  At step two, the ALJ found that plaintiff had the following severe impairments: borderline intellectual functioning and a learning

disorder (R. at 16).  At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment under either the child or adult listings (R. at 16).  For purposes of the childhood portion of the claim, the ALJ next determined that plaintiff's impairments are not functionally equal to a listed impairment (R. at 16-21).  Therefore, the ALJ concluded that plaintiff was not disabled before age 18 (R. at 21).

For purposes of plaintiff's adult disability claim, after establishing plaintiff's RFC (R. at 22), the ALJ found at step four that plaintiff had no past relevant work (R. at 23).  At step five, the ALJ found, based on vocational expert testimony, that plaintiff could perform other work that exists in significant numbers in the national economy (R. at 23-24).  Therefore, the ALJ concluded that plaintiff was not disabled as an adult (R. at 24).

**V.  Did the ALJ err by failing to take into consideration the teacher questionnaire?**

On August 24, 2004, Sandra K. Morrison (who has an M.S. in special education) filled out a teacher questionnaire (R. at 88-95).  Ms. Morrison had worked with the plaintiff for 5 years, and had seen plaintiff daily or on alternate days (R. at 88).  The questionnaire is specifically geared to a discussion of how plaintiff functions in the six domains in order to determine if a

claimant functionally equals a listing for purposes of childhood disability (R. at 89-94).  Plaintiff argues that the ALJ's conclusions are not proper because his RFC findings and the decision in the child portion of the case are not based on the substantial evidence of record (Doc. 7 at 9).  More specifically, plaintiff argues that the ALJ erred by not discussing the findings of the teacher questionnaire (Doc. 7 at 10).

The court will first review the ALJ's findings regarding functional equivalence.  In the third domain of interacting and relating with others, the ALJ stated "there is no indication in school reports that she has any significant difficulty with peer relationships" (R. at 19) in finding that plaintiff is not greatly limited in this area of functioning.  However, Ms. Morrison, in this domain of functioning, found that plaintiff had obvious problems making and keeping friends.  Ms. Morrison further stated that plaintiff "has obvious interpersonal interaction difficulties" (R. at 91).  Ms. Morrison also stated in the questionnaire that plaintiff's "interpersonal skills are poor" (R. at 94).  The ALJ failed to mention the opinions of Ms. Morrison on this domain, and the ALJ's statement that there is no indication in the school reports that plaintiff has significant difficulty with peer relationships is contradicted by the opinions of Ms. Morrison, plaintiff's teacher.

In the fourth domain of moving about and manipulating

objects, the ALJ found that plaintiff (before attaining age 18) "had no limitation in moving about and manipulating objects" (R. at 20).  The ALJ concluded that there is no evidence of any physical impairment, and therefore no evidence of any impairment in this domain of functioning (R. at 20).  However, Ms. Morrison, in this domain of functioning, found that plaintiff had an "obvious" problem in two out of seven categories in this domain, a "serious" problem in 2 out of 7 categories in this domain, and stated:

> Autumn lacks coordination of muscles and
> strength.  She can move around appropriately,
> but has trouble with strength in hands &
> arms.

(R. at 92).  Ms. Morrison later indicated in the questionnaire that plaintiff's coordination is below normal levels (R. at 94). The ALJ again failed to mention the opinion of Ms. Morrison on this domain, and the ALJ's statement that there is no evidence of physical impairment and no evidence of any impairment in this domain of functioning is clearly contradicted by the statement of Ms. Morrison.  An ALJ is required to consider all the relevant evidence in the case record when determining if plaintiff's impairments result in a marked or extreme limitation in the applicable domain.  20 C.F.R. § 416.926a(i)(3); 416.926(j)(3) (2007 at 930, 932).

The ALJ found that plaintiff had no limitation in moving about and manipulating objects, and that there was no evidence of

any physical impairment (R. at 20).  Subsequently, the ALJ's RFC findings stated that plaintiff has no physical impairment and is able to perform medium work (R. at 22).  However, Ms. Morrison stated that plaintiff lacks coordination of muscles and strength, and has trouble with strength in hands and arms (R. at 92).  Thus, the ALJ has clearly ignored evidence in the record that plaintiff has physical impairments in moving about and manipulating objects.

Ms. Morrison was plaintiff's teacher for 5 years.  Evidence from "other sources", which includes school teachers, may be based on special knowledge of the individual and may provide insight into the severity of an impairment and how it affects the claimant's ability to function.  Their opinions are important and should be evaluated on key issues such as impairment, severity and functional effects, along with the other relevant evidence in the file.  Non-medical sources, such as teachers, who have had contact with the individual in their professional capacity, are also valuable sources of evidence for assessing impairment severity and functioning.  Often, these sources have close contact with the individuals and have personal knowledge and expertise to make judgments about their impairments, activities, and level of functioning over a period of time.  SSR 06-03p, 2006 WL 2329939 at **2, 3.

For opinions from non-medical sources such as teachers, the

ALJ should consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the allegations.  2006 WL 2329939 at *5.  An opinion from a non-medical source who has seen the claimant in his or her professional capacity may, under certain circumstances, properly be determined to outweigh an opinion from a medical source, including a treating source.  2006 WL 2329939 at *6.

The case record should reflect the consideration of opinions from non-medical sources who have seen the claimant in their professional capacity.  The ALJ generally should explain the weight given to opinions from these other sources, or otherwise ensure that the discussion of the evidence in the decision allow a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.  2006 WL 2329930 at *6.

An ALJ is required to discuss significantly probative evidence which he rejects.  Grogan v. Barnhart, 399 F.3d 1257, 1266 (10th Cir. 2005); Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).  The ALJ cannot ignore evidence favorable to the plaintiff.  Owen v. Chater, 93 F. Supp. 1413, 1420 (D. Kan.

1995).  Furthermore, the court should not engage in the task of weighing evidence in the first instance, <u>Clifton v. Chater</u>, 79 F.3d 1007 at 1009; <u>Neil v. Apfel</u>, 1998 WL 568300 at *3 (10th Cir. Sept. 1, 1998), but should review the Commissioner's decision only to determine whether his factual findings are supported by substantial evidence and whether he applied the correct legal standards.  <u>Clifton</u>, 79 F.3d at 1009.  In this case, the ALJ never expressly mentioned the questionnaire by Ms. Morrison, but only vaguely and briefly summarized "teacher reports" in his decision (R. at 15).  Furthermore, the ALJ stated that there was no indication in school reports that plaintiff has any significant difficulty with peer relationships, and further stated that there is no evidence in the record of any physical impairment in regards to moving about and manipulating objects. The questionnaire by Ms. Morrison demonstrates the inaccuracy of both of these findings.  Therefore, this case shall be remanded in order for the ALJ to consider the opinions set forth by Ms. Morrison when making his findings in regards to both child and adult disability, including functional equivalence and RFC findings.

**VI.  Did the ALJ err in his analysis of the opinions of Dr. Gordon, a licensed psychologist?**

Mr. Gordon, a licensed psychologist, provided an initial clinical assessment on February 6, 2007 (R. at 243-249).  His

recommendations and prognosis are as follows:

> Prognosis is guarded, because of the Autistic
> Spectrum Disorder. Autumn is impaired to the
> point that she can not gain her drivers
> license. She absolutely without a doubt could
> not function in a competitive vocational
> setting. It is possible that she could
> function in a structured vocational setting,
> such as sheltered work shop, but I believe
> that that would be the most that could be
> expected from her given her limitations. It
> is this examiners clinical opinion that
> Autumn Gill has autism more specifically
> Asperger disorder and that this pervasive
> developmental problem, coupled with Attention
> Deficit Disorder, Borderline Intellectual
> Functioning, and Obsessive/Compulsive
> disorder creates an interaction of mental
> problems, which preclude any hope of her ever
> functioning in any vocational environment
> except possibly a sheltered workshop for the
> developmentally disabled. [T]he duration of
> her disability will be indefinite.

(R. at 246).  Mr. Gordon found plaintiff to be extremely limited

in 13 categories, markedly limited in 4 categories, and

moderately limited in 3 categories (R. at 248-249).  The ALJ

stated the following regarding Mr. Gordon's report:

> **the undersigned find[s] that this report is
> not supported by the underlying treatment
> notes or school reports**, is highly conclusory
> in nature, and is a one-time-only report
> created at the request of claimant's attorney
> **and is not fully representative of claimant's
> history and situation**.  It is therefore not
> entitled to any significant weight.

(R. at 23, emphasis added).

The ALJ did not find that Asperger Disorder or autism was a

severe impairment, and did not even mention this diagnosis when

making his findings at step two.  However, in his decision, the
ALJ failed to mention the diagnostic impression of Dr. Tarar, a
treating psychiatrist, on January 21, 1997 that plaintiff had
"features of autism" (R. at 172).  The ALJ also failed to mention
a letter from a psychologist, Dr. Kent, on November 16, 1996, in
which he stated that concerns had been raised by Bob Brown, a
school psychologist, that plaintiff had autistic traits (R. at
170-171).  The ALJ also failed to mention the questionnaire by
Ms. Morrison in 2004 stating that plaintiff has "characteristics
similar to autism" (R. at 94).  Thus, the medical records and
school reports provide support for Mr. Gordon's prognosis of
autism.

     Mr. Gordon also opined that the severity of plaintiff's
impairments prevent her from working in a setting other than a
structured vocational setting, such as a sheltered work shop.
The ALJ stated that Mr. Gordon's opinions are not supported by
the school records.  However, Ms. Morrison, who was plaintiff's
teacher for 5 years, stated that:

          Autumn's judgement is not good.  It
          interferes with independent functioning.

          She is definitely disabled.

(R. at 95).  Thus, the school records provide support both for
Mr. Gordon's diagnosis of autism and his opinion that she is
disabled.  However, these opinions by Ms. Morrison were again
ignored by the ALJ.  The ALJ has repeatedly ignored significantly

14

probative evidence favorable to the plaintiff, especially numerous opinions from Ms. Morrison.  Therefore, this case shall be remanded in order to consider the opinions of Mr. Gordon in light of all the evidence, including the medical records of Dr. Tarar, Dr. Kent, and the report from Ms. Morrison.  The ALJ shall also make a finding at step two of whether autism is a severe impairment in light of all the evidence.  Finally, the ALJ shall reevaluate plaintiff's credibility in light of all the evidence, including the teacher questionnaire by Ms. Morrison and the report by Mr. Gordon.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on March 18, 2008.

s/John Thomas Reid
JOHN THOMAS REID
United States Magistrate Judge

15